**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Gail R. WINNIE, Defendant–Appellant.**

No. 96–1694.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 4, 1996.

Decided Oct. 7, 1996.

Cheryl B. Schacht, Office of the United States Attorney, Madison, WI, Elinor Colbourn (argued), United States Department of Justice, Environment & Natural Resources Division, Washington, DC, for Plaintiff–Appellee.

Steven C. Underwood, Annemarie G. Pace (argued), Neider & Boucher, Madison, WI, for Defendant–Appellant.

Before RIPPLE, DIANE P. WOOD, and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Gail Winnie of Harshaw, Wisconsin, was a member of a party that went on a monthlong hunting safari in Africa in 1981. During the safari a cheetah was shot and killed. The cheetah was imported into the United States and found its way into Winnie's home where its skin and skull were mounted and displayed on a basement wall. Eleven years later, in 1992, federal and state wildlife agents descended on Winnie and seized the mounted cheetah, which they claimed he possessed in violation of law.

Three years after the seizure Winnie was charged with a federal misdemeanor—unlawfully possessing a cheetah (it's a good thing its common name is so simple, for a cheetah's formal name is Acinonyx jubatus) traded in contravention of the Convention in International Trade in Endangered Species of Wild Fauna and Flora as prohibited by the Endangered Species Act, 16 U.S.C. § 1538(c)(1).

Winnie possessed the cheetah (at least what was left of it after it was shot) continuously from 1981. But because all elements of

the offense were present in 1981, Winnie says the government waited too long to file its charge. It had to act, he said, by 1986. Because he was not charged within five years, Winnie claimed the prosecution was too stale to proceed. Nonsense, said the government. The possession of an illegally imported endangered species is a continuing offense which only stops when the possession stops. Winnie's possession ended in 1992, says the government, so the charge here was filed with plenty of time to spare. The district court bought the government's view, and when Winnie's motion to dismiss came up short he entered a guilty plea to the charge (his penalty; six months probation and a $500 fine), preserving his right to argue his statute of limitations defense on this appeal.

In criminal law, the purpose of a statute of limitations is to limit prosecutions to a fixed period of time after the commission of an offense. The limitation protects individuals from having to defend against stale charges. It also encourages law enforcement officials to move promptly when investigating suspected criminal activity. The "continuing offense" doctrine, which enlarges the permissible time period for bringing criminal charges, is, therefore, applied in only limited circumstances. *Toussie v. United States*, 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970).

*Toussie* remains the leading case on defining the scope of the continuing offense doctrine. Robert Toussie, who was born in 1941, became 18 on June 23, 1959. He did not, as required by law, register for the draft within five days of his eighteenth birthday. In 1967 he was indicted for failing to register for the draft. The government successfully argued—in the district court and the Court of Appeals for the Second Circuit—that the offense of failure to register for the draft was "continuing" and that the five-year statute of limitations did not bar the charge. The Supreme Court disagreed, noting "that the doctrine of continuing offenses should be applied in only limited circumstances...." A continuing offense, the Court said, could not be found "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one."

We think Winnie's defense must fail without even considering the continuing offense doctrine. The only relevant facts necessary to this appeal are not in dispute. Winnie admits continued possession of the cheetah from 1981 to 1992. His contention that the offense was "committed" in 1981 when he first took possession of the animal is contrary to the plain language of the statute, part of which makes it a crime "to possess" protected wildlife. Winnie's analysis would require a conclusion that the crime defined by Congress was "to take possession of" illegally traded wildlife, which Winnie did in 1981, rather than "to possess" wildlife, which he did through 1992. Congress did not define the crime that way. The statute of limitations thus did not begin to run until Winnie ceased possessing the cheetah. It was only then that he stopped violating the law.

The cheetah was contraband, just like heroin, and the passage of time never made its possession legal. Otherwise, someone like Winnie could hide a cheetah hide for five years and then display it (or even wear it) with impunity. That scenario was not what Congress had in mind when it prohibited the possession of endangered species. So we need not venture into the thicket of the continuing offense doctrine. Winnie was violating the law on the day the cheetah was seized, and the judgment of the district court is affirmed.

RIPPLE, Circuit Judge.

I concur in the result.